J-S47043-20

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| AMANDA RAE WAYDA | : | |
| | : | |
| Appellant | : | No. 794 MDA 2020 |

Appeal from the Judgment of Sentence Entered November 22, 2017
in the Court of Common Pleas of Lackawanna County
Criminal Division at No: CP-35-CR-0000281-2017

BEFORE:    STABILE, J., NICHOLS, J. and STRASSBURGER, J.*

MEMORANDUM BY STABILE, J.:                    **FILED MAY 21, 2021**

Appellant, Amanda Rae Wayda, appeals *nunc pro tunc* from the judgment of sentence entered following her negotiated guilty plea to conspiracy to commit third-degree murder.  Upon review, we affirm.

On August 25, 2016, Appellant and co-defendants Preston Layfield and Tyler Mirabelli were involved in the strangulation and death of Joshua Rose and disposal of Rose's body.  The Commonwealth charged Appellant with first-degree murder, conspiracy to commit third-degree murder, aggravated assault, and abuse of a corpse.[1]

On August 9, 2017, in exchange for Appellant's guilty plea to conspiracy to commit third-degree murder, the Commonwealth agreed to withdraw the other charges.  The Commonwealth contended Appellant

_____
[1] 18 Pa.C.S.A. §§ 2502(a), 903(a)(1), 2702(a)(1), and 5510, respectively.

*Retired Senior Judge assigned to the Superior Court.

placed a bag over Rose's head and encouraged Layfield to strangle Rose. N.T., 8/9/2017, at 9. Appellant denied placing a bag over Rose's head, but acknowledged that she encouraged Layfield to kill Rose. *Id.* at 9-10. There was no agreement as to sentence, and on November 22, 2017, the trial court sentenced Appellant to a term of 15 to 40 years of imprisonment.

On December 4, 2017, Appellant timely filed a post-sentence motion to withdraw her guilty plea.[2] Within the motion, Appellant argued her due process rights were violated when the Commonwealth failed to disclose a purported plea agreement with Layfield in violation of **Brady v. Maryland**, 373 U.S. 83 (1963). Motion to Withdraw Plea, 12/4/2017, at ¶ 12. Following argument, the trial court denied Appellant's motion on February 8, 2018.

Appellant filed a timely notice of appeal. However, our Court dismissed the appeal on November 14, 2018 because Appellant's counsel failed to file a brief. In August 2019, Appellant timely filed a *pro se* petition pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-46, seeking reinstatement of her appellate rights *nunc pro tunc*. The PCRA Court appointed counsel, who filed an amended PCRA petition on Appellant's behalf. The PCRA court granted the petition and reinstated Appellant's direct appeal rights.

---

[2] **See** 1 Pa.C.S.A. § 1908 ("Whenever the last day of any such period shall fall on Saturday or Sunday … such day shall be omitted from the computation.").

- 2 -

This timely-filed appeal followed. Appellant complied with Pa.R.A.P. 1925(b). In lieu of a Pa.R.A.P. 1925(a) opinion, the trial court referred us to its February 8, 2018 order denying her post-sentence motion and the Pa.R.A.P. 1925(a) opinion it authored in connection with her original appeal. Appellant presents one issue for our consideration.

> Whether the trial court abused its discretion in denying Appellant's post-sentence motion to withdraw her guilty plea after establishing prejudice on the order of a manifest injustice since her guilty plea was not knowingly, voluntarily, or intelligently entered because of the Commonwealth's failure to disclose an agreement with a key witness which was a material omission constituting manifest injustice, as well as a violation of **Brady v. Maryland** and her due process rights?

Appellant's Brief at 2.

This Court reviews the denial of a post-sentence motion to withdraw a guilty plea by the following standard.

> It is well-settled that the decision whether to permit a defendant to withdraw a guilty plea is within the sound discretion of the trial court. Although no absolute right to withdraw a guilty plea exists in Pennsylvania, the standard applied differs depending on whether the defendant seeks to withdraw the plea before or after sentencing. When a defendant seeks to withdraw a plea after sentencing, he must demonstrate prejudice on the order of manifest injustice. [A] defendant may withdraw his guilty plea after sentencing only where necessary to correct manifest injustice.
>
> ***
>
> Manifest injustice occurs when the plea is not tendered knowingly, intelligently, voluntarily, and understandingly. In determining whether a plea is valid, the court must examine the totality of circumstances surrounding the plea. Pennsylvania law presumes a defendant who entered a guilty plea was aware of

- 3 -

> what he was doing, and the defendant bears the burden of proving otherwise.

*Commonwealth v. Hart*, 174 A.3d 660, 664–65 (Pa. Super. 2017) (internal citations and quotation marks omitted). One of the reasons the law imposes a stricter standard for post-sentence withdrawal motions is to balance "the tension … between the individual's fundamental right to a trial and the need for finality in the proceedings." *Commonwealth v. Hvizda*, 116 A.3d 1103, 1106 (Pa. 2015).

On appeal, Appellant asserts the Commonwealth failed to disclose that it had entered into a plea agreement with Layfield as to his sentence, and the trial court erred in dismissing her motion to withdraw based on the Commonwealth's non-disclosure. Appellant's Brief at 10. In her post-sentence motion and Rule 1925(b) statement, Appellant conceded she was aware the Commonwealth and Layfield negotiated a plea agreement as to his third-degree murder charge, but contended she was not aware of any agreement as to his negotiated sentence. *See* Rule 1925(b) Statement, 6/18/2020, at 5; *see also* Motion to Withdraw Plea, 12/4/2017, at ¶¶ 8, 11. According to Appellant, this lack of disclosure constitutes a *Brady* violation, which is a manifest injustice and renders her guilty plea unknowing or involuntary. Appellant's Brief at 10. The *Brady* violation purportedly lies in the Commonwealth's omission that it had an agreement with Layfield "that his sentence would be no worse than the sentence of any co-defendant[, *i.e.*, Appellant nor Mirabelli]." *Id.* Essentially, Appellant is implicitly

- 4 -

claiming that she may have decided to go to trial, had she known the specifics of Layfield's plea agreement.

To establish a **Brady** violation, a defendant "must demonstrate: (1) the prosecution concealed evidence; (2) the evidence was either exculpatory or impeachment evidence favorable to him; and (3) he was prejudiced." **Commonwealth v. Treiber**, 121 A.3d 435, 460–61 (Pa. 2015). Establishing a **Brady** violation requires proving the presence of all of the elements of **Brady**. **See Commonwealth v. Willis**, 46 A.3d 658 (Pa. 2012) (holding the absence of one of the elements under **Brady**, even assuming the presence of the other two, is fatal to a **Brady** violation claim); **see also Commonwealth v. Cay Ly**, 980 A.2d 61 (Pa. 2009) (same). "Any implication, promise, or understanding that the government would extend leniency in exchange for a witness' testimony is relevant to the witness' credibility." **Commonwealth v. Strong**, 761 A.2d 1167, 1171 (Pa. 2000). The failure to disclose evidence of an agreement between a witness and the Commonwealth for favorable treatment in exchange for testimony violates **Brady** when the credibility of the witness is decisive to the jury's finding of guilt. **Id.** at 1174-75.

It is unclear whether there was an agreement as to Layfield's sentence requiring disclosure. By way of background, Appellant and her co-defendants

were sentenced separately on the same day.[3] Counsel for each remained present during the entirety of the hearings for all three co-defendants. Appellant was sentenced before Layfield, and as noted, received a term of 15 to 40 years of imprisonment. Layfield was sentenced last, and the Commonwealth recommended he be sentenced to 20 to 40 years of imprisonment.

The following evidence weighs in favor of the existence of an agreement between the Commonwealth and Layfield. Following the Commonwealth's recommendation, Layfield's counsel asserted "there was an agreement with the Commonwealth that my client's sentence would be no worse than any sentence imposed against any co-defendant," and therefore, the Commonwealth's recommended sentence would "violate[]" the agreement" because Appellant had had received a lesser sentence than what the Commonwealth was recommending for Layfield. N.T., 11/22/2017, at 89. The Commonwealth acknowledged the agreement, but claimed the recommended sentence would not violate the agreement because it sought "the maximum sentence with regards to all three [co-defendants]." *Id.* at 90. Meanwhile, the trial court maintained Layfield's sentence was within its discretion and that it was not bound by the agreement between Layfield and the Commonwealth. *Id.* The trial court sentenced Layfield to 20 to 40 years

---

[3] Mirabelli pleaded guilty to conspiracy to commit third-degree murder. Layfield pleaded guilty to third-degree murder.

of imprisonment. In its opinion, the trial court stated it "elect[ed] not to follow the agreement." Trial Court Opinion, 5/16/2018, at 9.

In contrast, the following evidence weighs against the existence of an agreement. At the hearing on Appellant's post-sentence motion to withdraw her plea, Appellant's counsel mentioned the purported agreement between Layfield and the Commonwealth. The trial court disputed the existence of an agreement.

> THE COURT: There's no written signed agreement that I'm aware of, it was more of a recommendation than an agreement.
>
> [APPELLANT'S COUNSEL]: They've acknowledged there was an agreement, that there was an agreement for them recommending that Layfield gets the least sentence.
>
> THE COURT: Use the right term, recommendation.
>
> [APPELLANT'S COUNSEL]: Correct, but we're entitled to that.
>
> THE COURT: Go ahead, continue with your argument.

N.T., 2/7/2018, at 10.

The conflicting testimony make it unclear whether there was an agreement as to Layfield's sentence between the Commonwealth and Layfield. In our view, an agreement as to Layfield's sentence did not exist. A defendant may enter into an open or negotiated plea; both types of agreement specify the charges to be brought, but a negotiated plea varies in that it also specifies the penalties to be imposed. *Commonwealth v. White*, 787 A.2d 1088, 1089 n. 1 (Pa. Super 2001). Nonetheless, even

though we are not convinced there was an agreement between Layfield and the Commonwealth as to his sentence, we still must determine whether a violation occurred under the factors espoused in *Brady*.

Although Appellant conceded that she was aware Layfield was cooperating, she claims that the Commonwealth did not disclose its sentencing agreement with Layfield to Appellant. According to Appellant, she "only learned of the agreement after she was sentenced when the Commonwealth admitted on the record that it entered into an agreement." Appellant's Brief at 3.

In contrast, the trial court concluded that the Commonwealth satisfied its burden by disclosing the sentencing agreement to Appellant's counsel. Trial Court Opinion, 5/16/2018, at 14. At the hearing on Appellant's post-sentence motion to withdraw her plea, Appellant's counsel argued that the Commonwealth failed to disclose Layfield's sentencing agreement to counsel or the trial court until Layfield's sentencing. N.T., 2/7/2018, at 9. The following exchange then ensued.

> THE COURT: That is absolutely not true ... we had a pretrial conference in my chambers where it was discussed that [Layfield] was going to cooperate and testify.
>
> ***
>
> THE COURT: ... we had that discussion in my chambers at a pretrial conference.

[APPELLANT'S COUNSEL]: That they recommended that he was going to get the least amount of sentence?

THE COURT: Yes.

[APPELLANT'S COUNSEL]: We didn't get that.

THE COURT: You were sitting in my chambers when we had that discussion, absolutely.

[APPELLANT'S COUNSEL]: We were also discussion [*sic*] all different types of agreements.

THE COURT: I will swear in my law clerk if you want me to, she was present there.

[APPELLANT'S COUNSEL]: We were all talking about all different agreements.

THE COURT: We were all present at a pretrial conference in my chambers where this was discussed.

*** 

THE COURT: ... there was a discussion about a recommendation in my chambers at the pretrial conference, I vividly remember that.

*** 

[APPELLANT'S COUNSEL]: Well, I don't want [t]he [c]ourt to leave here thinking that I wasn't aware that Layfield was obviously going to get some kind of benefit. … and I was aware that he was getting third degree murder, but I don't believe there was ever any indication ... that the recommendation would be that he

get the least amount of sentence from any of the other three [*sic*].

*Id.* at 11-13, 17.

The Commonwealth explained its recollection of that conversation as follows.

[COMMONWEALTH]: There was no secret agreement, there was no information that was kept from other attorneys. They knew full well that he was going to plea[d] to third[-]degree murder, and there was a discussion in chambers ... where there was a conversation about the fact that ... we would not seek more time for [Layfield] than the other defendants. And, again, we were consistent with that. To say that this is new information is ridiculous.

*Id.* at 15.

After this discussion, the trial court credited the Commonwealth's position, stating it "vividly remembers" the "discussions at that pretrial conference" and its recollection was that Layfield's counsel "said because of this cooperation, I would expect that my client would get a lesser sentence." *Id.*

Upon review, the trial court's conclusion that Appellant's counsel knew about Layfield's purportedly agreed-upon sentence recommendation from

the pretrial conference is supported by the record.[4]  Because the prosecution did not conceal the agreement to recommend a lesser sentence, there was no **Brady** violation.  Accordingly, the trial court did not abuse its discretion in denying Appellant's post-sentence motion to withdraw her plea based on her failure to establish the first element of a **Brady** violation.

Based on the foregoing, we agree with the trial court that Appellant has not demonstrated the manifest injustice necessary to permit her to withdraw the plea after sentence was imposed, and we affirm her judgment of sentence.

Judgment of sentence affirmed.

Judge Strassburger did not participate in the consideration or decision of this case.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 05/21/2021

---

[4] "Counsel is presumed to have rendered effective assistance," **Commonwealth v. Isaac**, 205 A.3d 358, 362 (Pa. Super. 2019), and thus, we assume he articulated the terms of Layfield's agreed-upon sentence recommendation to Appellant.

- 11 -